**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CYNTHIA MENDOZA-MARTINEZ,
        Plaintiff,

        vs.                                  CIV No. 14-1151 CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,
        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Plaintiff Cynthia Mendoza-Martinez's

*Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the

"Motion"), (Doc. 18), filed August 31, 2015; Defendant's *Brief in Response to Plaintiff's*

*Motion to Reverse and Remand the Agency's Administrative Decision* (the

"Response"), (Doc. 22), filed November 30, 2015; and Plaintiff's *Reply in Support of*

*Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc.

23), filed December 17, 2015.

On September 1, 2010, Ms. Mendoza-Martinez filed an application for disability

insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i)

and 423, and supplemental security income ("SSI") under Title XVI of the Social

Security Act, 42 U.S.C. § 1382c. (Administrative Record "AR" 149-156). In both

applications, Ms. Mendoza-Martinez alleged disability commencing November 8, 2008.

(AR 149, 153). Her claims for benefits were initially denied, (AR 67-70, 71-74), and

subsequently denied upon reconsideration. (AR 79-81). A request for a hearing was

filed on July 27, 2011, (AR 88-89), and a hearing was held on June 17, 2013 before

Administrative Law Judge ("ALJ") Ann Farris. (AR 34-60). Ms. Mendoza-Martinez and Mary Diane Weber, an impartial vocational expert ("VE"), testified at the hearing. *Id.* Ms. Mendoza-Martinez was represented at the hearing by attorney Michael Armstrong. (AR 16). ALJ Farris issued an unfavorable decision on May 31, 2013, finding that Ms. Mendoza-Martinez was not disabled from November 1, 2008 through the date of the decision. (AR 13-33). Through counsel, Ms. Mendoza-Martinez filed an application for review by the Appeals Council on June 12, 2013. (AR 12). The Appeals Council denied Ms. Mendoza-Martinez's request for review on October 24, 2014, (AR 1-4), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Mendoza-Martinez argues that the ALJ committed reversible, legal error by: (1) failing to include moderate psychological limitations in Ms. Mendoza-Martinez's residual functional capacity ("RFC"); and (2) improperly weighing the evaluations of psychologists Esther Davis, Ph.D., and Warren Steinman, Ph.D. (Doc. 18 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ improperly weighed the medical opinions of Dr. Davis and Dr. Steinman, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

I.    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

## III.    Background

Ms. Mendoza-Martinez initially applied for disability benefits alleging that she was

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

disabled due to back problems, arthritis in both knees, pelvic issues after a hysterectomy, menopausal symptoms, and post-traumatic stress disorder ("PTSD"). (AR 182).

At step one, the ALJ determined that Ms. Mendoza-Martinez had not engaged in substantial gainful activity since November 1, 2008. (AR 18). At step two, the ALJ concluded that Ms. Mendoza-Martinez was severely impaired with degenerative disc disease of the lumbar spine, osteoarthritis of the knee, depression, dysthymic disorder, polysubstance abuse, and PTSD. (*Id.*). The ALJ also noted that although Ms. Mendoza-Martinez complained of problems with her left hand, the medical evidence only supported "no more than a minimal effect on her ability to work[,]" thus the ALJ found the impairment to be non-severe. (AR 18-19).  At step three, the ALJ concluded that none of Ms. Mendoza-Martinez's impairments, solely or in combination, met or equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 19).

The ALJ proceeded to step four and found that Ms. Mendoza-Martinez's medically determinable impairments could cause her symptoms; however, her statements about the intensity, persistence, and limiting effects were "not entirely credible." (AR 21). The ALJ based the credibility finding on Ms. Mendoza-Martinez's testimony, her medical record, reports from state agency physicians, and reports from consulting examiners ("CEs"). (AR 19-26).

The ALJ ultimately found that Ms. Mendoza-Martinez had the RFC to perform a wide range of unskilled, light work with the exertional limits that she can: (1) lift and carry up to 20 pounds on an occasional basis; (2) lift and carry ten pounds on a frequent

basis; (3) stand and/or walk, and sit for up to six hours in an eight-hour workday; (4) occasionally climb, balance, stoop; and (5) should never kneel, crouch, or crawl. (AR 21). As for non-exertional limits, the ALJ found that Ms. Mendoza-Martinez can: (1) perform work that involves simple decisions; (2) involves few workplace changes; and (3) requires occasional, superficial contact with the public. (*Id.*). Based on the RFC finding,the ALJ found that Ms. Mendoza-Martinez could not perform her past relevant work as a durable medical equipment representative. (AR 26).

At step five, the ALJ inquired whether Ms. Mendoza-Martinez would be able to perform any other work existing in significant numbers in the national economy. (AR 27). The ALJ noted that Ms. Mendoza-Martinez was forty-eight years old at the alleged disability onset date and was classified as a "younger individual" in accordance with the Regulations. (*Id.*). Subsequently, Ms. Mendoza-Martinez changed age categories to "closely approaching advanced age," which includes individuals between fifty and fifty-four. (*Id.*). The ALJ also determined that Ms. Mendoza-Martinez has at least a high school education and is able to communicate in English. (*Id.*).

The VE testified at the hearing that an individual with Ms. Mendoza-Martinez's same age, education, work experience, and RFC could perform the jobs of garment folder, garment bagger at a dry cleaners, or merchandise marker. (AR 27-28). Based on this analysis, the ALJ concluded that because Ms. Mendoza-Martinez was capable of performing work existing in significant numbers in the national economy, she was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 28).

## IV.   Analysis

Ms. Mendoza-Martinez argues that the ALJ committed reversible, legal error at

step four. Ms. Mendoza-Martinez contends that the ALJ rendered a RFC finding that was unsupported by substantial evidence and legally erroneous because the ALJ: (1) did not account for all of the moderate psychological restrictions discussed by non-examining state psychologist John Thibodeau, Ph.D.; (2) did not put enough weight on an evaluation by psychologist Dr. Davis; and (3) put too much weight on a CE performed by psychologist Dr. Steinman. (Doc. 18 at 1).

The Commissioner responds that the "ALJ reasonably found that [Ms. Mendoza-Martinez's] dearth of treatment for psychological symptoms-as well as her demonstrated lack of candor-significantly undermined her allegations of debilitating mental limitations." (Doc. 22 at 1). The Commissioner contends that Ms. Mendoza-Martinez is inviting the Court to reweigh the evidence, which the Commissioner asks the Court to decline and instead to affirm the ALJ's decision. (*Id.*).

A. *Requirement to Address Probative Evidence and Weigh All Medical Opinions in the Record*

An ALJ must consider all evidence in the record, although she is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).. However, the ALJ "must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)); *see also Briggs*, 248 F.3d at 1239. In the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion. *Clifton*, 79 F.3d at 1009.

Specifically, the Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). The Regulations define medical opinions as statements that reflect "judgments about the nature and severity of your impairment(s)." 20 C.F.R. 404.1527(a)(2). Mere collections of treatment notes, including subjective complaints and treatment prescribed, do not constitute medical opinions. *Eacret v. Barnhart*, No. 04-5062, 120 Fed. Appx. 264, 267 (10th Cir. Jan. 10, 2005) (unpublished); *Moua v. Colvin*, No. 12-5161, 541 Fed. Appx 794, 797 (10th Cir. July 30, 2013) (unpublished).

Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)-(d) and 416.927 (c)-(d). Based on these factors, "an examining physician's opinion is normally entitled to more weight than a non-examining physician's opinion." *Kerwin v. Astrue*, No. 06-14668, 224 Fed. Appx. 880, 884 (10th Cir. March 15, 2007) (unpublished) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (internal citations omitted)). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any

subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin*, 224 Fed. Appx. at 884.

B. *The ALJ's RFC Findings*

At step four, the ALJ considered Ms. Mendoza-Martinez's impairments and their effects on her functioning in order to make an RFC finding. The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from her impairments, affect her ability to work. *See* 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); *see also* Social Security Rulings ("SSR") 96-8p, 1996 WL 374184, at *1, 3 (July 2, 1996). The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, a work schedule of eight hours a day for five days a week, or an equivalent  schedule. *Id.* at *7.

The RFC is based on all relevant evidence in the record, including information about the individual's symptoms, reports of daily activities, lay evidence, medical history, medical signs and laboratory findings, and any medical source statements submitted by a treating or other acceptable medical source. SSR 96-8p, 1996 WL 374184 at *5, 7. The ALJ considers and evaluates the claimant's statements of her subjective complaints and descriptions and observations of her functional limitations, including pain and fatigue. *See* 20 C.F.R. §§ 404.1529, 404.1545(e), 416.929, 416.945(e); *see generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also takes into account any statements about what the claimant can still do that have been provided by medical and other sources, whether or not they are based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513, 416.913.

Here, Ms. Mendoza-Martinez argues that the ALJ failed to include all of the moderate psychological limitations identified by state agency psychologist Dr. Thibodeau in her RFC finding and failed to identify the weight given to Dr. Thibodeau's opinion. Additionally, Ms. Mendoza-Martinez states that the ALJ improperly weighed the opinions of both Dr. Davis and Dr. Steinman. (Doc. 18 at 1).

 1. *The ALJ's Analysis of Dr. Thibodeau's Opinion*

Ms. Mendoza-Martinez argues that the ALJ erroneously failed to assign a weight to Dr. Thibodeau's opinion and also did not account for all of his moderate limitation findings in the RFC. (Doc. 18 at 9). The Commissioner contends that the RFC findings were consistent with Dr. Thibodeau's opinion, and thus the fact that the ALJ did not assign a weight to the opinion is harmless error. (Doc. 22 at 9).

Dr. Thibodeau, a non-examining state agency psychologist, reviewed Ms. Mendoza-Martinez's case and completed a Mental Residual Functional Capacity Assessment ("MRFCA") as well as a Psychiatric Review Tehnique on March 31, 2010. (AR 283-300). Dr. Thibodeau found that Ms. Mendoza-Martinez has moderate limitations in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 283-284). As to understanding and memory, Dr. Thibodeau found that Ms. Mendoza-Martinez could "understand and remember locations, simple instructions and work-like procedures but would have difficulties with more detailed instructions due to the effects of depression on her

cognitions." (AR 285). Although Dr. Thibodeau found that Ms. Mendoza-Martinez would be able to complete simple tasks, make simple work decisions, and maintain regular attendance, he stated that she would have a difficult time persisting at tasks for an eight-hour day. (*Id.*). Additionally, her pace and concentration would be negatively affected. (*Id.*). Dr. Thibodeau noted that Ms. Mendoza-Martinez could cooperate, be socially appropriate, and accept criticism from supervisors. (*Id.*). Finally, Dr. Thibodeau found that Ms. Mendoza-Martinez exhibited depressive syndrome and substance addiction disorder. (AR 290, 295). In summing up the evidence, Dr. Thibodeau stated that "this is a woman who has developed a major depressive syndrome with ongoing medical problems. She has sought treatment but is still with effects from her depression that significantly affect her functionality at the current time." (AR 299).

The ALJ discussed these limitations found by Dr. Thibodeau in her opinion, but did not state the weight she gave them. (AR 25). In her ultimate RFC, the ALJ found that "[f]rom a mental standpoint, [Ms. Mendoza-Martinez] can perform work that involves simple decisions, with few workplace changes, and requires occasional superficial contact with the public." (AR 21).

Pursuant to the Commissioner's own Rulings, ALJs cannot ignore the opinions of psychological consultants "and must explain the weight given to the opinion in their decisions." Social Security Rulings ("SSR") 96-6P at *2. However the Tenth Circuit has held that an ALJ does not need to expressly weigh an opinion if the RFC "is generally consistent with [the CE's] findings." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012). The Tenth Circuit found that since "further analysis or weighing of [the

CE] opinion" would not "advance [the claimant's] claim of disability," this error was harmless. (*Id.*).

If, however, the RFC is not consistent with Dr. Thibodeau's opinion, the error of not specifically weighing the opinion would not be harmless. Ms. Mendoza-Martinez argues that although the ALJ accounted for some of the moderate limitations set by Dr. Thibodeau, the ALJ failed to include Ms. Mendoza-Martinez's limitations with regard to concentration, persistence, and pace. (Doc. 18 at 11). In response, the Commissioner states that Ms. Mendoza-Martinez is "erroneously relying on Dr. Thibodeau's preliminary findings (Section I) rather than his ultimate conclusion (Section III). (Doc. 22 at 9). Additionally, the Commissioner argues that the Tenth Circuit has found that an RFC limitation of "unskilled" work accounts for moderate limitations in concentration, persistence, or pace. (*Id.* at 11); *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015).

In *Vigil*, the ALJ found at step three that the claimant had "moderate difficulties in concentration, persistence, and pace in social functioning." *Id.* at 1203. There, the Tenth Circuit found that the ALJ took these moderate limitations into account in the RFC by limiting the claimant to unskilled work. *Vigil*, 805 F.3d at 1103. However, at the same time, the *Vigil* Court found that in some cases a "limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id.* at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1290 n. 3 (10th Cir. 2012) (recognizing that restrictions to unskilled jobs do not in all instances account for the effects of mental impairments.)) As the *Vigil* Court notes, the Social Security Administration Program Operations Manual System ("POMS") defines the mental demands of "unskilled" work as the ability to: (1) "understand, carry

out, and remember simple instructions;" (2) "make judgments that are commensurate

with the functions of unskilled work, i.e., simple work-related decisions[;]" (3) "respond

appropriately to supervision, coworkers and work situations; and" (4) "deal with changes

in a routine work setting." POMS § DI 25020.010, B(3) (*available at*

https://secure.ssa.gov/poms.nsf/lnx/0425020010).

     Here, at step three the ALJ found "[w]ith regard to concentration, persistence or

pace, the claimant has *moderate* difficulties." (AR 20) (emphasis in original). The facts

presented here are indistinguishable from *Vigil*. The ALJ accounted for Dr. Thibodeau's

moderate limitations in concentration, persistence, and pace by limiting Ms. Mendoza-

Martinez to "unskilled" work in the RFC. Therefore, the ALJ's mistake in not explicitly

weighing Dr. Thibodeau's opinion was harmless error.

     *2. The ALJ's Analysis of Dr. Davis's Opinion*

     Ms. Mendoza-Martinez underwent a psychological evaluation by Dr. Davis on

April 11, 2013. (AR 324-336). Dr. Davis interviewed Ms. Mendoza-Martinez at the

request of her attorney for her disability claim. (AR 324). She administered several tests

during the interview, including (1) a mental status examination, (2) Montreal Status

Examination, (3) Burns Depression Inventory, and (4) Generalized Anxiety Disorder 7-

Item Scale. (*Id.*). In addition to interviewing Ms. Mendoza-Martinez, Dr. Davis reviewed

all of Ms. Mendoza-Martinez's medical records. (*Id.*) Based on her findings, Dr. Davis

diagnosed Ms. Mendoza-Martinez with (1) PTSD; (2) Major Depressive Disorder,

Recurrent, Severe Without Psychotic Features; (3) Generalized Anxiety Disorder; and

(4) Panic Disorder with Agoraphobia. (AR 329).

The ALJ "afforded little weight to the opinion of Dr. Davis," because: (1) Dr. Davis saw Ms. Mendoza-Martinez at the request of her attorney; (2) Dr. Davis's report "relied heavily on [Ms. Mendoza-Martinez's] subjective reports[;] (3) Ms. Mendoza-Martinez reported symptoms to Dr. Davis that she had not previously reported; (4) Ms. Mendoza-Martinez lied to Dr. Davis about her recent drug use; and (5) Ms. Mendoza-Martinez has not engaged in mental health treatment. (AR 25-26). The ALJ concluded that Ms. Mendoza-Martinez "has clearly exaggerated her symptoms to Dr. Davis, in order to portray her conditions in a more favorable light. (*Id.*). Ms. Mendoza-Martinez argues that the ALJ rejected Dr. Davis's opinion for inappropriate reasons, (Doc. 18 at 22-24), while the Commissioner argues that the ALJ weighed all of the conflicting medical evidence and found certain factors "detracted from the reliability of Dr. Davis's opinion." (Doc. 22 at 12).

By assigning Dr. Davis's opinion "little weight," the ALJ "effectively reject[ed]" her opinion. *Chapo* 682 f.3d at 1291. In rejecting Dr. Davis's opinion, the ALJ noted that Ms. Mendoza-Martinez saw Dr. Davis at the request of her counsel. (AR 25). As Ms. Mendoza-Martinez points out, the Tenth Circuit has held that rejecting an opinion because it was prepared at counsel's request for a hearing is not valid. (Doc. 18 at 2).

> This reasoning, without more, does not justify rejection of a medical opinion. It implies a consulting examiner's opinion is necessarily less trustworthy when it is sought or obtained by the claimant, a position this court long ago rejected in the context of treating physicians' opinions. Moreover, rejecting [the doctor's] opinion on the ground the opinion was obtained by [claimant's] counsel fails to follow the established legal rules for weighing medical opinions.

*Quintero v. Colvin*, No. 13-1396, 567 Fed. Appx. 616, 620 (10th Cir. June 5, 2014) (unpublished) (internal citations omitted).

The Commissioner cites to *White v. Barnhart* with a parenthetical that states the "fact that claimant began treatment one year after filing [an] application for benefits, and was motivated to [the] see treating physician in part because she needed the doctor to fill out a form necessary for her disability claim [was] a factor in rejecting [the] treating physician's opinion." (Doc. 22 at 12 n. 5); *White v. Barnhart*, 287 F.3d, 903, 907-08 (10th Cir. 2002). This is not reflective of the Court's holding in the case. The Commissioner quotes from the ALJ's opinion, not the Court's findings. The Court held that among a number of different factors, a brief treating relationship was sufficient to decrease the weight an ALJ put on an opinion of a treating doctor. *Id.* Counsel should be mindful to accurately represent the Court's findings. Additionally, the *White* case does not address the question of whether seeing a physician at the request of counsel should decrease the weight an ALJ gives the opinion. Based on Tenth Circuit precedent, it was improper to reject the opinion of Dr. Davis because Ms. Mendoza-Martinez saw the doctor on the recommendation of her counsel.

Next, the ALJ dismissed Dr. Davis's opinion because it was based on Ms. Mendoza-Martinez's subjective reports. Ms. Mendoza-Martinez argues that psychological examinations must be based in part on subjective reports, (Doc. 18 at 22), while the Commissioner states that subjective reports are a valid reason to discount a physician's opinion. (Doc. 22 at 14). The Commissioner relies on *Flaherty v. Astrue* for the proposition that an ALJ can reject a physician's opinion that is based solely on a subjective report by claimant. (Doc. 22 at 14); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2008). In *Flaherty*, the ALJ rejected an opinion that a claimant's migraines were disabling because the doctor "did not have a treating relationship with [claimant],

he based his opinion on a single, subjective report given to him by [claimant], and his opinion was not supported by the evidence in the record." *Flaherty*, 515 F.3d at 1070. Additionally, the ALJ noted that the claimant had never been diagnosed with migraines and had never been prescribed medication for them. *Id. Flaherty* is distinguishable from Ms. Mendoza-Martinez's case as both Dr. Davis and Dr. Steinman, whose opinion was afforded "significant weight," diagnosed Ms. Mendoza-Martinez with PTSD and Major Depressive disorder, among other diagnoses. (AR 281, 329). Ms. Mendoza-Martinez's primary care doctors noted her history of depression or her reports of depression on at least eight separate occasions. (AR 270, 275, 340-42, 345-48, 372-75, 377-79, 402, 412-13). Additionally, the SSA's Disability Report Appeals form indicates that Ms. Mendoza-Martinez was prescribed sertraline for depression, Ms. Mendoza-Martinez told Dr. Steinman that she was taking Zoloft, and she reported to the ALJ that she was taking Prozac. (AR 43, 206, 281).

Moreover, the Tenth Circuit has explicitly found that an ALJ cannot reject a psychological opinion because it is based on subjective reports. *Thomas v. Barnhart*, No. 04-7141, 147 Fed. Appx. 755, 760 (10th Cir. Sept. 2, 2005) (unpublished). "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective 'tests;' those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Id.* at 761 (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). Although Dr. Davis could have based her opinion solely on Ms. Mendoza-Martinez's subjective reports, she also examined Ms. Mendoza-Martinez's medical record, and performed several different psychological tests in order to formulate

her opinion. As a result, it was improper to place little weight on Dr. Davis's opinion because she relied on Ms. Mendoza-Martinez's subjective reports.

Further, there is also an inconsistency within the ALJ's opinion. Although the ALJ put "little weight" on Dr. Davis's opinion, she put "significant weight" on Dr. Steinman's opinion, despite the fact that Dr. Steinman only met with Ms. Mendoza-Martinez once and based his opinion solely on the subjective reports of Ms. Mendoza-Martinez. It does not appear from his report that Dr. Steinman performed any psychological tests and he did not have any medical records available. (AR 282). The ALJ does not explain why she gave more weight to Dr. Steinman's opinion than Dr. Davis's, when both were based on subjective opinions.

Third, the ALJ rejected Dr. Davis's opinion because "there is good reason to question [Ms. Mendoza-Martinez's] credibility." The Commissioner argues that Dr. Davis's opinion was entitled to less weight because Ms. Mendoza-Martinez "was unreliable." (Doc. 22 at 14). The Commissioner questions Ms. Mendoza-Martinez's inconsistencies in her reports about previous work and also points to the fact that Ms. Mendoza-Martinez told Dr. Davis that she had not used drugs in thirty years. (Doc. 22 at 15-16, AR 325). However, Dr. Davis had Ms. Mendoza-Martinez's medical report, and was able to confront Ms. Mendoza-Martinez about a failed drug test in January 2011. *Id*. Ms. Mendoza-Martinez also told Dr. Steinman that she had not used cocaine in ten years, but since he did not have her medical records, he did not know that she had recently failed a drug test. (AR 280). Neither the ALJ nor the Commissioner explain why Ms. Martinez-Mendez's inconsistent statements to both doctors entitle Dr. Davis's opinion to less weight and Dr. Steinman's to greater weight.

Additionally, the Tenth Circuit found it "disturbing that [an] ALJ 'second-guessed' [a doctor's diagnosis] by discounting his assessment primarily because it was based on [claimant's] sometimes inconsistent, subjective statements. *Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (unpublished).  The Court found that since the doctor was aware that his patient had made inconsistent statements, "and he rendered his opinion in light of that knowledge," the medical opinion was valid. *Id.* The Court found that the ALJ "impermissibly put him in the position of judging a medical professional on the assessment of medical data." *Id.* An ALJ may not substitute her own judgment for that of a treating doctor. *Candelario v. Barnhart*, No. 05-1222, 166 Fed. Appx. 379, 384 (10th Cir. Feb. 10, 2006) (unpublished) (citing *Hamlin*, 365 F.3d at 1221). Given that Dr. Davis was able to base her opinion on all of the medical evidence, her opinion deserves greater weight than Dr. Steinman's, who did not have this evidence.

Finally, the ALJ rejected Dr. Davis's opinion because "given the extreme limitations, one would expect some mental health treatment." (AR 26). At her hearing, Ms. Mendoza-Martinez testified that she was not able to receive mental health treatment because she did not have the insurance and the finances to do so. (AR 43) The ALJ questioned how Ms. Mendoza-Martinez could afford treatment for her physical problems, but not her mental health issues. (AR 26).

Ms. Mendoza-Martinez argues that the ALJ must consider four factors described in *Thompson v. Sullivan* when a claimant has not sought treatment for claimed medical impairments. (AR 23); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). *Thompson* held that for an ALJ to rely on the failure to seek treatment as a reason for a

determination of noncredibility, she should consider, "(1) whether the treatment as issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse." *Id.* (quoting *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)). Neither the ALJ nor the Commissioner address the *Thompson* test. The Court finds that the ALJ did not adequately address the reasons why Ms. Mendoza-Martinez did not seek treatment before making a determination of noncredibility.

For these reasons, the Court concludes that the ALJ did not properly weigh the medical opinions of Dr. Davis or Dr. Steinman. As a result, the ALJ committed legal error, which requires remand.

### 3.  The ALJ's Analysis of Dr. Steinman's Opinion

Ms. Mendoza-Martinez underwent a mental status examination by Dr. Steinman at the request of the State agency. (AR 24). As discussed above, the ALJ placed "significant weight" on Dr. Steinman's opinion because "Dr. Steinman had ample information to form a professional opinion." (AR 25). Ms. Mendoza-Martinez objects to the weight the ALJ placed on Dr. Steinman's opinion for several reasons: (1) the report violated 20 C.F.R. § 404.1519n(4); (2) he lacked access to medical reports; and (3) he failed to "conduct a full and thorough evaluation." (Doc. 18 at 1, 25). For the reasons described more fully above, the Court agrees with Ms. Mendoza-Martinez on the latter two objections to the extent that the ALJ placed too great a weight on Dr. Steinman's opinion.

As to Ms. Mendoza-Martinez's first objection, 20 C.F.R § 404.1519n requires minimum scheduling intervals "(i.e., time set aside for the individual, not the actual

duration of the consultative examination)" that should be used. For psychological examinations, the regulation requires sixty minutes for the minimum scheduling interval. *Id.* Ms. Mendoza-Martinez argues that Dr. Steinman violated this regulation because his evaluation took less than the required sixty minutes. (Doc. 18 at 25). The Commissioner argues that this regulation does not dictate the actual duration of the examination. The Court agrees with the Commissioner. The regulation explicitly states that the minimum scheduling intervals are time set aside for a consultation, but "not the actual duration of the consultative examination." 20 C.F.R § 404.1519n. It is clear to this Court that the regulation is in place to ensure that there is enough time to complete each CE exam, but there is no regulation for the duration of the examination. In her Reply, Ms. Mendoza-Martinez argues that since the ALJ did not address this violation in her opinion, the Commissioner is "attempting an improper post hoc rehabilitation of ALJ Farris's decision." (Doc. 23 at 6) (emphasis omitted). The ALJ does state in her opinion that Ms. Mendoza-Martinez's "representative attempted to discount the report of [Dr. Steinman] . . . stating that he did not spend time with the claimant . . . ." Because this Court finds that Ms. Mendoza-Martinez is misinterpreting the regulation, the Court does not find error in the ALJ's opinion.

Finally, Ms. Mendoza-Martinez argues that the ALJ's failure to honor Ms. Mendoza-Martinez's request to subpoena Dr. Steinman was in error because it was "reasonably necessary for the full presentation of the case." (Doc. 18 at 24-25). Ms. Mendoza-Martinez objected to Dr. Steinman's report prior to the hearing. (AR 147). At the hearing, the ALJ stated that the objection went "to weight, not admissibility." (AR 37). Ms. Mendoza-Martinez requested the ALJ issue a subpoena for Dr. Steinman to

testify at the hearing based on Ms. Mendoza-Martinez's claim that he violated 20 C.F.R. § 404.1519n, he did not evaluate medical records, and did not perform a thorough evaluation. (Doc. 18 at 25). The Tenth Circuit has held that a claimant does not have an absolute right to subpoena a physician who has submitted an adverse report. *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994). Indeed, the ALJ has the discretion whether or not to issue a subpoena. *Id.* The Court found that where a report was sufficiently detailed, an ALJ does not abuse her discretion in failing to require a cross-examination at the hearing. Dr. Steinman's report is sufficiently detailed. The report met the requirements for a consultative examination report in that it included: (1) the chief complaint; (2) a detailed description of the history relative to the complaint, as described by Ms. Mendoza-Martinez; (3) described pertinent "positive" and "negative" detailed findings based on the described history and an examination; (4) the diagnosis and prognosis of the impairment; (5) described Ms. Mendoza-Martinez's current abilities; and (6) offered the physician's comments on Ms. Mendoza-Martinez's condition. 20 C.F.R. § 404.1519n(1)-(7). Thus, the Court finds that given the detailed report provided by Dr. Steinman, the ALJ did not abuse her discretion in not issuing a subpoena. Although the report met the regulatory requirements, because we are remanding for the ALJ to determine the weight to give to Dr. Davis's opinion, the ALJ must also determine the weight to give Dr. Steinman's opinion. The weight of Dr. Steinman's opinion should be assessed in light of this ruling and after properly assessing Dr. Davis's opinion.

## V.   Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh the medical opinions in the record. On remand, the ALJ should properly

weigh the medical opinions, including those discussed in this Order. Additionally, the ALJ should adequately explain the weight given to each opinion.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.


_____

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE